UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DAVID RUNYON, | ) |
|       Plaintiff, | ) |
|       v. | ) No. 2:17-cv-00530-WTL-DLP |
| JOHN EDWARDS, et al. | ) |
|       Defendants. | ) |

**Entry Granting the Defendants' Motion for Summary Judgment and
Directing the Entry of Final Judgment**

**I. Background**

Plaintiff David Runyon, an inmate at the United States Penitentiary – Terre Haute (USP-TH), brings this action pursuant the theory set forth in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Mr. Runyon alleges that while he was incarcerated at USP-TH, the defendants caused him to be labeled a "snitch" placing his life in danger. Dkt. No. 8. The Court screened his complaint and permitted his *Bivens* claim against the defendants to proceed. Dkt. No. 9.

The defendants seek resolution of Mr. Runyon's claim through the entry of summary judgment. Although one defendant, Michael Sample, has not appeared in the action, the motion for summary judgment is applicable as to him as well as the moving defendants. *See Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986) ("[W]here one defendant files a motion for summary judgment which the court grants, the district court may *sua sponte* enter summary judgment in favor of additional non-moving defendants if the motion raised by the first defendant is equally effective in barring the claim against the other defendants and the plaintiff

had an adequate opportunity to argue in opposition to the motion."). The plaintiff opposes the motion for summary judgment.

## II. Standard of Review

A motion for summary judgment asks that the court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. P. 56(e). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory

statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id.*, at 901.

### III. Applicable Law

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.*, 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson*, 477 U.S. at 248). The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies. The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532.

The PLRA's exhaustion requirement is not subject to either waiver by a court or futility or inadequacy exceptions. *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001); *McCarthy v. Madigan*, 503 U.S. 140, 112 S. Ct. 1081 (1992) ("Where Congress specifically mandates, exhaustion is required."). Moreover, the PLRA requires "proper exhaustion." "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) (footnote omitted); *see also Dale v. Lappin*, 376 F.3d at 655 ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

## IV. Undisputed Facts

The following statement of facts was evaluated pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Runyon as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

The BOP promulgated an administrative remedy system which is codified in 28 C.F.R. §§ 542.10, *et seq.*, and BOP Program Statement 1330.18, *Administrative Remedy Procedures for Inmates*. Dkt. No. 20-1, ¶ 4.

The Administrative Remedy process is a method by which an inmate may seek formal review of a complaint related to any aspect of his imprisonment. To exhaust his remedies, an inmate must first file an informal remedy request through an appropriate institution staff member via a BP-8. If the inmate is not satisfied with the informal remedy response, he is required to first address his complaint with the Warden via a BP-9. If the inmate is dissatisfied with the Warden's response, he may appeal to the Regional Director via a BP-10. If dissatisfied with the Regional Director's response, the inmate may appeal to the General Counsel via a BP-11. Once an inmate receives a response to his appeal from the General Counsel, after filing administrative remedies at all required levels, his administrative remedies are deemed exhausted as to the specific issues properly raised therein. Dkt. No. 20-1, ¶ 7.

All administrative remedy requests filed by inmates are logged and tracked in the SENTRY computer database, an electronic record keeping system used by the BOP. That database shows the filings of administrative remedy requests by Mr. Runyon and the responses to those requests. Dkt. No. 20-1.

The claim in this action is based on an event which occurred at the USP-TH on November 20, 2015. On November 30, 2015, Mr. Runyon filed BP-8 Administrative Remedy No. 845384-F1 alleging that defendant Edwards coerced him to participate in an interview with FBI staff on November 20, 2015. Dkt. No. 20-4, pp. 12-13. In the BP-8, Mr. Runyon states, "After being on death row for almost a decade now I am fluent with the quagmire Edwards' trickery had placed me in, whereas now I will have a snitch jacket placed on me for coming out and being interviewed by the FBI." *Id*. A response denying that remedy was issued on December 5, 2015. Dkt. No. 20-4, p. 11. On December 14, 2015, Mr. Runyon submitted a BP-9, assigned Remedy No. 845384-F1 disputing and disagreeing with defendant Sample's response to his informal remedy request. Dkt. No. 20-4, pp. 8-9. A response denying the remedy was issued on December 22, 2015. Dkt. No. 20-4, p. 5.

Mr. Runyon did not appeal this matter further. Dkt. No. 20-1, ¶ 10.

## V. Discussion

It is well settled that exhaustion is a precondition to filing suit and that a prisoner must fully exhaust his administrative remedies before filing suit, which includes filing "complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025 (emphasis added); *see, e.g.*, *Jones v. Bock*, 549 U.S. 199, 202 (2007) (stating that the PLRA "requires prisoners to exhaust prison grievance procedures before filing suit"); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) (noting that "'[no] action shall be brought until exhaustion has been completed" (emphasis added)). Although Mr. Runyon filed a BP-8 and BP-9 concerning his allegations that Edwards had coerced him to participate in an interview with the FBI, Dkt. No. 20-4, he failed to exhaust at the institution level and never appealed the institution's response to either the Regional or Central Office levels. Dkt. No. 20-1; Dkt. No. 20-3. Appealing to the appropriate

Regional Director and then to General Counsel at the Central Office are required steps for exhaustion under the BOP's regulations, see 28 C.F.R. § 542.15(a), and Program Statement 1330.18. In failing to comply with the second and third steps of the BOP's administrative remedy program, Mr. Runyon failed to exhaust his administrative remedies regarding the allegations set forth in his complaint. *See Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Pozo*, 286 F.3d at 1025; *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.").

Mr. Runyon sets forth several arguments in his response in opposition to summary judgment.[1] First, he disputes the defendants' use of the word "unrestricted" when describing the accessibility of the BOP program statement to inmates in the law library because he is on death row and subject to more restrictive security measures than non-death row inmates. Dkt. No. 26, p. 3. However, Mr. Runyon does not dispute that he was aware of the administrative remedy program or the exhaustion requirement. He also argues that BOP staff ignore issues or questions presented to them by death row inmates. Dkt. No. 26, p. 6. However, he does not claim or state that the staff ignored his questions or requests relating to his administrative remedy in this action, or that staff refused to file his administrative appeals. Rather, he spends three pages of his section titled "Statement of Material Facts in Dispute" complaining generally about the conditions on death

---

[1] In his response, Mr. Runyon asks that the Court seal his medical records. Dkt. No. 26, p. 9. The only documents that can be construed as medical records are psychological evaluations found at docket numbers 26-22 and 26-23. The motion to seal is **granted**. **The clerk is directed** to seal the documents found at docket numbers 26-22 and 26-23.

row.[2] Dkt. No. 26, pp. 3-6. However, these complaints do not create a genuine issue of material fact regarding whether Mr. Runyon was prevented from exhausting his administrative remedies by BOP staff.[3]

Mr. Runyon admits that he did not exhaust his administrative remedies, but argues that prison staff delayed the delivery of his mail from his attorney which preventing him from timely filing a regional administrative appeal. Dkt. No. 26, pp. 6-9. Specifically, an email Mr. Runyon attached as evidence shows that the following communication occurred between Mr. Runyon and Dana, his death penalty attorney.

> -----Chavis, Dana on 1/5/2016 4:21 PM wrote:
>
> Hi, David. Happy new year! We received the envelope of papers from you. Your paralegal is busy preparing a major pleading in another case and does not have the time to type the the form for you. We are making the copies and returning everything to you today so that you have time to fill it in and submit it before the deadline. Take care, Dana

DAVID ANTHONY RUNYON on 1/14/2016 10:19:52 AM wrote
Hi Dana, I am worried I will not get it submitted in time. I still haven't received the package you sent on 5 Jan. Did you by chance make a copy of my rough draft and everything else before sending it back? Is it still possible for someone there to type it up and send a complete copy in to them? I sent it to you guys to finish but also because I was worried that anything I send off to that grievance address would, in my opinion, likely (somehow) be delayed and NOT get postmarked in time. That is all the excuse they would need to reject it apparently according to my jailhouse lawyer. And it has happened here before...CYA effort by these people here, my guess. Also they said I had only 20 days to file and I got it on the evening of the 23rd of DEC...but do holidays and weekends count ? So when exactly is my filing deadline? -Runyon

---

[2] Mr. Runyon asks the Court to consider the fact he is on death row and subject to more severe restrictions on his movement to excuse his failure to exhaust his administrative remedies.

[3] Mr. Runyon states that as a death row inmate, he is represented by counsel and that the defendants failed to call his attorney before allowing him to be interviewed by the FBI. However, this argument goes to the merits of this civil rights action and will not be address at this time. Dkt. No. 26, pp. 8-9.

> -----Chavis, Dana on 1/14/2016 2:51 PM wrote:
>
> Hi, David. I received this email from you today (Jan. 14th). I don't understand why you have not received the package we mailed to you on January 5th.
>
> We kept a copy of everything. The grievance response is dated December 22 and says "an appeal must be received within 20 calendar days of the date of this response." You signed a receipt for the response on December 23rd. Twenty days from December 22nd would have been January 11th.
>
> The government filed its answer to the 2255 and a copy of that is being mailed to you today. You should receive it in two days. If not, please let me know. Dana

FROM: 57997083
TO: Chavis, Dana
SUBJECT: RE: RE: Grievance
DATE: 01/30/2016 12:15:44 PM

Hi Dana, I finally received the original grievance you sent on the 5th...got it on the 27th. Get this it was already opened even though it was clearly marked properly as legal mail...even stamped in red letters in two other place "Legal Mail" yet someone decided to open it, read it, and hold it for 21 days. They stamped "This does not qualify as special/legal mail etc..." on it as an excuse to claim justification to open it and snoop. But even that doesn't excuse the long delay. The second copy you mailed to me on 25 Jan. arrived on the 28th by cert. mail. I signed for it and it was opened in front of me...hmmm and it only took 3 days to get to me...weird huh? Anyways someone here was trying to squash my appeal efforts on that coerced interview and in my opinion this only confirms their willingness to continue to abuse their FBOP authority and committ illegal acts. Mail tampering or whatever is a felony offense under Federal law for USPS protection right? I don't have access to that kind of stuff. But I could use the statute number to include in my appeal asking to renew my deadline so I can continue to file the first appeal. I have to start a new appeal just so I can continue my first appeal....what a bunch of bunk! It's frustrating but I'm not giving up. My jailhouse attorney gave up so now I have to buy typewriter ribbon and correction ribbon...$10. Just another way they milk our money. Thank you for burning the copies though it saved me several dollars as well. And thank you for sending me a copy of my penpal profile. I got the other legal mail as well. The govt response to our 2255, discovery motion, and our request to consolidate deadlines by a schedule thing. Let me know if I found the right lab report for you. Thanks again for everything.
David

Dkt. No. 26-7.

The response to Mr. Runyon's BP-9 is dated December 22, 2015. He had 20 days from the date of the response to file an appeal to the Regional Director. Dkt. No. 20-4, p. 5. That meant Mr. Runyon's response was due by Monday, January 11, 2016. Mr. Runyon did not timely file a regional appeal and blames it on BOP staff purposely withholding the delivery of his mail from

his attorney as the reason. He argues the email shows that he "mysteriously" received his legal mail one day after the filing deadline. Dkt. No. 26, p. 7.[4]

In a declaration of support[5] and in his surreply[6], Dkt. No. 29; Dkt. No. 34, Mr. Runyon argues that the administrative process was unavailable to him because BOP staff was delaying his mail. This argument is without merit.

In *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016), the Supreme Court discussed three situations in which administrative remedies are unavailable to inmates. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 1859. Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. And, finally, remedies may be deemed unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860. Thus, administrative remedies are primarily unavailable to inmates where "affirmative misconduct" prevents prisoners from pursuing administrative remedies. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). Such misconduct may include prison officials failing to respond to a properly filed grievance, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); telling a prisoner that he

---

[4] This statement is curious considering it means he received his legal papers from his attorney on January 10 (a Sunday), when he states in his email to her that he received the legal papers from her on January 27, 2016.

[5] The declaration filed by Mr. Runyon does not specifically address why the administrative process was unavailable to him other than to say that BOP's "mishandling" of the mail caused him to miss the deadline to file his regional appeal.

[6] A surreply is limited to 20 pages. The Court reviewed the first 20 pages of Mr. Runyon's surreply. L. R. 7-1(e).

cannot file a grievance when he in fact can do so, *Thomas v. Reese*, 787 F.3d 845, 847-48 (7th Cir. 2015); denying a prisoner grievance forms, threatening him, and soliciting other inmates to attack him for filing grievances, *Kaba v. Stepp*, 458 F.3d 680, 686 (7th Cir. 2006); and preventing prisoner access to grievance forms, *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004). At the same time, unavailability can extend beyond affirmative misconduct to omissions by prison personnel, such as failing to inform the prisoner of the grievance process. *Hernandez*, 814 F.3d at 842.

None of these situations are present here. The e-mail conversation shows that Mr. Runyon was notified as of January 5, 2016—six days before his deadline to file a BP-10—that his attorney would not be assisting him in drafting or editing the draft BP-10. As such, Mr. Runyon could have filed his BP-10 then, and it would have been timely filed.[7]

Ultimately, as evidenced by his draft BP-10, Dkt. No. 26-6, Mr. Runyon had access to the appropriate administrative remedy forms and, as demonstrated in his January 14, 2016, email to his attorney, knew his deadline was approaching. There is no dispute that he was notified in the Warden's response that he had 20 calendar days to file a regional appeal. Dkt. No. 20-4, p. 5. Moreover, BOP Program Statement 1331.18, Administrative Remedy Program, clearly provides that:

> An inmate may obtain assistance from another inmate or from institution staff in preparing a Request or an Appeal. An inmate may also obtain assistance from outside sources, such as family members or attorneys. However, no person may submit a Request or Appeal on the inmate's behalf, and obtaining assistance will not be considered a valid reason for exceeding a time limit for submission unless the delay was caused by staff.

---

[7] Mr. Runyon does not argue that he did not have access to complete a new BP-10 rather than wait on his attorney to return the draft he sent to her for review.

28 C.F.R. § 542.16(a); *see* BOP Program Statement 1331.18 ("PS 1331.18"), Administrative Remedy Program, at 8.[8] Accordingly, although Mr. Runyon was permitted to obtain assistance from his attorney, the BOP regulations and program statement explicitly provide that obtaining assistance will not be considered a valid reason for exceeding a time limit for submission unless the delay was caused by staff. 28 C.F.R. § 542.16(a). Mr. Runyon missed the deadline because he waited for his attorney to mail him the legal documents. Thus, the administrative process was not unavailable.

Mr. Runyon has not designated any evidence that BOP staff purposely delayed his mail to prevent him from timely filing his regional appeal.[9] Moreover, to the extent Mr. Runyon felt that he was delayed by BOP staff in receiving his mail from his attorney that contained his regional appeal, the proper mechanism would be to appeal this issue in his current administrative appeal to the Regional Director. Rather than filing his regional appeal alleging good cause for his untimeliness, Mr. Runyon began a new administrative appeal complaining that he did not timely receive his mail. Dkt. No. 26-10; Dkt. No. 26-11; Dkt. No. 26-12; Dkt. No. 29-1, pp. 23-30. Furthermore, BOP Program Statement 1330.18, p. 7 allows inmate an extension of time to file a BP-10 where the inmate demonstrates a valid reason for delay.

Additionally, there is no dispute that Mr. Runyon did not file a BP-11 with the Central Office in Remedy Case No. 845384, which is the last required step of the administrative remedy process, see 28 C.F.R. § 542.15.

---

[8] https://www.bop.gov/policy/progstat/
[9] Mr. Runyon attached an envelope as evidence that is post-marked on January 6, 2016, and there is hand written note that it was received on January 27, 2016. Dkt. No. 26-8. However, this delay in the post-mark date and the date it was received by USP-TH is not sufficient evidence that BOP staff caused Mr. Runyon to be late in filing his regional appeal or BP-10.

Finally, any argument that the filing would have been futile because the remedy would have been rejected as untimely does not excuse Mr. Runyon's failure to file it. *See, e.g., Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000) ("[T]here is no 'futility exception' to the PLRA exhaustion requirement."). Indeed, as the Seventh Circuit has recognized, "no one can know whether administrative requests will be futile; the only way to find out is to try." *Perez*, 182 F.3d at 536-37.

Because Runyon failed to exhaust his mandatory administrative remedies regarding the Eighth Amendment claim he advances against Edwards and Sample in this action, those claims are barred as a matter of law, justifying the dismissal of this action. *See Jones*, 549 U.S. at 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

## VI. Conclusion

The consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that Mr. Runyon's FBI claim should not have been brought and must now be dismissed without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("We therefore hold that *all* dismissals under § 1997e(a) should be without prejudice."); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (explaining that "a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating"). The motion for summary judgment, Dkt. No. 20, is therefore **granted**.

The motion to file late documents, Dkt. No. 31, is **granted**. The Court notes that the documents attached to the motion to file late documents are identical to the documents attached to Mr. Runyon's declaration. *See* Dkt. No. 29.

The plaintiff's motion to seal documents, Dkt. No. 26, is **granted**. **The clerk is directed** to seal the documents found at docket numbers 26-22 and 26-23.

    **IT IS SO ORDERED**.

Date: 8/29/18

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

DAVID RUNYON
57997-083
TERRE HAUTE - USP
TERRE HAUTE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

Gina M. Shields
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
Gina.Shields@usdoj.gov